## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SANDRA SINGH**                                                    **CIVIL ACTION**

**VERSUS**

**WACKENHUT CORPORATION**                          **NO. 07-173-C-M2**

### <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, July 1, 2008.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

SANDRA SINGH                                                        CIVIL ACTION

VERSUS

WACKENHUT CORPORATION                                 NO. 07-173-C-M2

**MAGISTRATE JUDGE'S REPORT**

This matter is before the Court on the Motion for Partial Summary Judgment (R.

Doc. 53) filed by defendant, The Wackenhut Corporation ("Wackenhut").  Plaintiff, Sandra

Singh ("Singh"), has filed an opposition (R. Doc. 59) to this motion, in response to which

Wackenhut has filed a reply memorandum.  (R. Doc. 65).

**FACTS & PROCEDURAL BACKGROUND**

On March 12, 2007, Singh filed her original complaint in this matter, alleging that her

employer, Wackenhut, discriminated against her on the basis of her race and gender in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended.

On December 5, 2007, she was permitted to file an amended complaint, asserting a claim

of equal pay discrimination under the Equal Pay Act of 1963, Title VII of the Civil Rights Act

of 1964.   Her claims stem from her employment with Wackenhut as a security

officer/sergeant assigned to work at Woman's Hospital of Baton Rouge.[1]  According to the

Affidavit of Wackenhut's General Manager, Ken Kennedy, Wackenhut provides physical

security to business, government, and professional clients.  *See*, Affidavit of Ken Kennedy,

Exhibit 1 to Wackenhut's motion.  It has a multi-tiered security service program, whereby

it offers different levels of security services from entry-level security officers to elite security

_____

[1] Singh has been employed with Wackenhut as a security officer/sergeant since
December 17, 2002, and she currently serves as an assistant supervisor.

1

officers called Custom Protection Officers or "CPOs." *Id.* The CPO division of Wackenhut was established in 1989 to provide a higher level of security personnel, who are experienced in working under stressful conditions and in communicating with the public and authorities under such conditions and who are trained in the "use of force" principles and in firearms use and safety. *Id.* According to the evidence presented by Wackenhut, to be a CPO candidate, an individual is required to possess one or more of the following qualifications: (1) Military/Combat Arms MOS; (2) Elite/Special Unit Soldier; (3) Graduate of a Law Enforcement Academy; (4) Retired Military; (5) Former Military/Civilian Law Enforcement; (6) Former Fire Fighter; (7) Criminal Justice/Political Science Degree; (8) Former Corrections Officer; or (9) Former Federal Agency Officer. *See,* Exhibit 1, referring to the CPO requirements issued by Wackenhut, which are attached to Kennedy's affidavit as Exhibit 1-A.

Woman's Hospital ("Woman's") informed Wackenhut that it was interested in phasing in CPOs to work at specific posts and stations beginning on or about December 2002. *Id.*; Affidavit of James Judice, Security Manager at Woman's, Exhibit 4 to Wackenhut's motion. Such phasing-in of CPOs occurred at specific hospital posts over a period of time due to fiscal limitations on the hospital's part. *Id.* Woman's chose what positions and/or stations at the hospital would be staffed with CPOs. *Id.* One of the hospital posts/stations for which Woman's requested an upgrade to a CPO was Singh's station, Station 4. *Id.* Station 4 was identified by Woman's as an "area of concern" because personnel at that station, who had worked for a prior security company, had lost

the master keys to the exterior hospital doors.  *Id.*[2]

On June 21, 2005, Singh sent a letter to Major Jeff Dunlap ("Dunlap"), the Wackenhut Operations Manager at Woman's, advising that it had come to her attention that Wackenhut may decide to replace all Station 4 officers with CPOs and that, if that was indeed the intent of the company, she requested that she be cross-trained as a CPO.  *See*, Exhibit 3 to Wackenhut's motion.  According to Singh's deposition testimony in this matter, she was told by Dunlap that she was not qualified for the position of CPO, and in order to become qualified, she would need to obtain a degree in criminal justice.  *See*, Singh deposition, Exhibit 2 to Wackenhut's motion, pp. 70-71.  Singh, however, admitted during her deposition that she never actually applied for the CPO position; that she was not and is not qualified for such position; and that she has not done anything to try and meet the requirements to become a CPO.  *Id.*, pp. 244-45; 248-49.

In her present suit, Singh contends that she was subjected to racial and gender discrimination and to equal pay discrimination because, in June 2006, she was denied training as a CPO and that such training was instead provided to a white male by the name of Mark Deer.  She also asserts that she was illegally removed from her position at Station 4 since that station did not require staffing by CPOs.  She seeks lost wages; damages for past and present pain and suffering; damages for mental anguish, humiliation, and inconvenience; and any other pecuniary damages that she may demonstrate.  She filed an

---

[2] Currently, there are fifteen (15) security posts/stations at Woman's, and Stations 3, 4, 7, 8, 10, 11, and 14 are all CPO-manned posts.  *Id.*  There are presently twenty-three (23) CPOs working at Woman's, with eight (8) of those officers being African-American males; eleven (11) being African-American females; three (3) being Caucasian males; and one (1) being a Caucasian female.  *Id.*

EEOC complaint related to her claims herein, and the EEOC determined that no Title VII violation had occurred.

Wackenhut has now filed the present motion for partial summary judgment, seeking to have the Court dismiss Singh's race and gender Title VII discrimination claims, her mental anguish/humiliation claims, and her claim for damages for physical pain and suffering.  Wackenhut contends that Singh's race and gender Title VII discrimination claims should be dismissed because she will be unable to satisfy the required elements of her *prima facie* case of discrimination because she has conceded she was not and is not qualified for the CPO position and that she never applied for that position, and even assuming Singh could establish the elements of her *prima facie* case, Wackenhut has nevertheless articulated a legitimate, non-discriminatory reason for not training Singh as a CPO and for moving her from Station 4.  Wackenhut further asserts that Singh cannot demonstrate that its reasons for not training her for the position of CPO and for moving her from Station 4 were a pretext for either race and/or gender discrimination.  Wackenhut also argues that, since Singh does not have a viable claim for discrimination under Title VII, she cannot sustain her claim for mental anguish/humiliation.  Finally, Wackenhut contends that, because Singh does not allege that she was physically injured or hurt on the job, her claim relating to physical pain and suffering should also be dismissed with prejudice.

## LAW & ANALYSIS

**I.   Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when

a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[3] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[4]

## II.   Can Singh sustain her burden of proof on her Title VII race and gender discrimination claims?

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's race or sex. 42 U.S.C. §2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Intentional discrimination can be proven through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Because Singh has presented no direct evidence of discrimination, her claim will be analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Alvarado*,

---

[3] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[4]The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

at 611.   Under that framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prime facie* case.   *Id.*   The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.   *Id.,* citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).   The burden on the employer at that stage "is one of production, not persuasion; it 'can involve no credibility assessment'."   *Reeves*, at 142.   If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either:   (1) that the employer's proffered reason for its actions is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.   *Alvarado*, at 611, citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

To establish her *prima facie* case of race and gender discrimination, Singh must demonstrate that:   (1) she belongs to a group protected by Title VII; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open, and the employer continued to seek applicants among persons having plaintiff's qualifications. *Lamb v. City of Sweetwater Housing Authority*, 3 F.3d 439 (5th Cir. 1993).   As noted above, in its present motion, Wackenhut argues that Singh cannot establish a *prima facie* case of race and gender discrimination because she cannot satisfy the above second and third elements.   The Court agrees.   Singh specifically conceded during her deposition in connection with this matter that she did not apply for the CPO position and that she was

6

not qualified for that position at the time of the alleged discrimination nor is she qualified

for such position at the present time.[5]  Furthermore, because she never applied for the

CPO position, she also was not rejected for that position, a fact that she readily admitted

during her deposition.[6]  Because Wackenhut has presented evidence, in the form of Singh's

---

[5] On pages 248-249 of her deposition, the following exchange took place:

> Q.    I'm assuming that you never applied for the CPO
>        position; is that right, based on what you told me so
>        far?
>
> A.    No. I never applied.

See, Singh deposition, Exhibit 2 to Wackenhut's motion.

On pages 114-115 of her deposition, Singh admitted that she did not meet the qualifications for the CPO position, in that she had never served in the military, special forces, or in any elite combat unit; has never attended or graduated from any law enforcement academy; has never attended or graduated from a police academy; has never attended any firefighting school or participated in any course for firefighting; has never worked as a firefighter; does not have a criminal justice or political science degree; has never attended or graduated from any school or academy for corrections officers; has never worked as a corrections officer; and has never worked for any federal agency.  *Id.*, p. 114-115.  On pages 244-245, Singh expressly admits that she did not meet the CPO requirements at the time of the alleged discrimination, May and June 2006, and presently:

> Q.    In May and June of 2006 then you did not meet the
>        CPO requirements, correct?
>
> A.    Correct.
>
> Q.    And you still don't meet them?
>
> A,    Correct.

*Id.*, p. 244-245; *See also*, p. 248-249.

[6] On pages 248-249 of Singh's deposition, the following exchange occurred:

> Q.    As a result you were never turned down for the CPO

own deposition testimony, indicating that she will be unable to satisfy all of the required elements of her *prima facie* case, summary judgment should be granted in Wackenhut's favor, unless Singh can come forward with competent evidence demonstrating a genuine issue of material fact as to whether she can prove the second and third elements of her *prima facie* case.  She has not done so.

The only evidence Singh has presented with her opposition to the present motion is a print-out from the Wackenhut website, which indicates that, as of August 8, 2006, the basic qualifications for the CPO position required that an applying individual possess one of the following:  (1) Law enforcement experience; (2) Service in the elite military forces, military police or combat arms; (3) Graduate of a police/corrections academy; (4) Criminal justice degree, associate or higher; or (5) Military career.  Singh relies upon such evidence to demonstrate that, at the time of the alleged discrimination (June 2006), training/experience as a fire fighter was not one of the prerequisite qualifications for becoming a CPO; yet, Mark Deer, a white male who had firefighting training/experience in 2005-2006, was provided training for the CPO position, while Singh was not.  Singh has also submitted a copy of a portion of a letter sent from Wackenhut to Uma Kandan, the Supervisory Investigator for the Equal Employment Opportunity Commission, dated

---

position; is that right?

A.    Yes.

Q.    And you haven't done anything to try to meet the CPO requirements; is that right?

A.    No.

*Id.*, p. 248-249.

8

October 20, 2006 (after the alleged discrimination occurred), wherein it is indicated that the prerequisite qualifications for the CPO position includes all of the above, in addition to former firefighting experience.  Based upon that evidence, Singh contends that Wackenhut only added firefighting experience to the list of qualifications for the CPO position as a result of her discrimination complaint being filed with the EEOC to "cover" itself since it provided training to Deer for the CPO position, and not to Singh.

Singh's arguments and evidence, however, do nothing to satisfy her *prima facie* case of discrimination, which requires that she possess one of the qualifications for the CPO position at the time of the alleged discrimination and that she actually applied for and was rejected for that position.  She has submitted no competent summary judgment evidence establishing such facts.[7]  Although Singh contends that she does not have the evidence to support her *prima facie* case because Wackenhut has not responded to her discovery requests, the Court specifically determined, in a June 6, 2008 Ruling & Order concerning a motion to compel filed by Singh, that Wackenhut had provided responses to Singh's discovery requests and that, because Singh had not alleged any specific deficiencies or problems with Wackenhut's responses/document production, her motion to compel should be denied.  *See*, R. Doc. 58.  Accordingly, Singh cannot blame her failure to produce evidence supporting her *prima facie* case upon an alleged failure on

---

[7] In other words, in terms of satisfying her *prima facie* case, the fact that firefighting experience/training may not have been included among the qualifications for CPO at the time of the alleged discrimination is irrelevant.  Such fact would only be relevant if Singh could establish her prima facie case and could use such information in an effort at rebutting Wackenhut's articulated reason for denying Singh training for the CPO position and for moving her from Station 4, *i.e.*, because she was not qualified to receive such training and to continue working at Station 4, which had been designated by Woman's as a post that had to be manned by CPO's.

Wackenhut's part to respond to discovery.

Finally, although Singh contends that she was never counseled by anyone at Wackenhut on how she could become a CPO and was never informed that "having a certificate of achievement" in criminal justice would suffice as a qualification, she has not presented any competent evidence demonstrating that Wackenhut was required to counsel her in that regard and/or substantiating her claim that a "certificate of achievement" in criminal justice is, in fact, sufficient, and that she had such a certificate at the time of the alleged discrimination.  As noted above, based upon the evidence submitted with both Wackenhut's motion and Singh's opposition, an associate's degree or higher in criminal justice is required to be qualified for the CPO position.   The remainder of Singh's arguments concerning her discrimination claims are conclusory, unsubstantiated, and lend no competent support to her *prima facie* case.  Accordingly, her Title VII claims of race and gender discrimination should be dismissed.

**III.    Should Singh's claim for mental anguish be dismissed?**

Singh admitted in her deposition that her claim for mental anguish is related solely to her Title VII discrimination claims and not to her allegations relating to unequal pay.  *See*, Singh deposition, p. 265.  Since she is unable to carry her burden of proof relative to her discrimination claim, her mental anguish claim should likewise be dismissed. *See, DeCorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007).  Furthermore, even assuming Singh could sustain her Title VII claims, her mental anguish claim should nevertheless be dismissed because she has failed to present sufficient evidence supporting such claim.  To be entitled to mental anguish damages, a plaintiff must show a discernible injury to his/her mental state and submit evidence regarding the nature and extent of the alleged harm.  *E.E.O.C. v.*

10

*WC&M Enterprises, Inc.*, 496 F.3d 393 (5ht Cir. 2007).  Singh has not submitted any evidence concerning the nature and extent of any alleged mental injury she sustained as a result of Wackenhut's actions; instead, she has simply made conclusory assertions that she and other female employees were "continually harassed and talked about," that she was "subjected to the officers coming over here saying that they were here to straighten you bitches out because Dunlap sick of you females," and that she was told "that Dunlap was going to make [t]his an all male site."  Such assertions are insufficient to carry her burden of proving a claim of mental anguish, and that claim should therefore also be dismissed.

## IV.   Should plaintiff's claim for damages for physical pain and suffering be dismissed?

An award for physical pain and suffering is a proper element in a plaintiff's recovery for personal physical injuries tortiously inflicted.  AMJUR DAMAGES §200.  In her deposition, Singh expressly admitted that she was not physically injured or hurt while on the job at Wackenhut and that her claims for physical pain and suffering relate to her mental anguish,[8] an alleged injury which the Court has already determined lacks any evidentiary basis.  Furthermore, Singh has not presented any evidence with her opposition demonstrating that she sustained a physical injury or symptoms during the time period in question.  Thus, her claim for physical pain and suffering should also be dismissed.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion for Partial Summary Judgment (R. Doc. 53) filed by defendant, The Wackenhut Corporation, be **GRANTED**, and

---

[8] *See*, Singh deposition, p. 274.

11

that the following claims filed by plaintiff, Sandra Singh, be **DISMISSED WITH**

**PREJUDICE**:  (1) her Title VII race and gender discrimination claims; (2) her claim for

mental anguish/humiliation; and (3) her claim for damages for physical pain and suffering.

Signed in chambers in Baton Rouge, Louisiana, July 1, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**