UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SANDRA SINGH**            **CIVIL ACTION**

**VERSUS**

**WACKENHUT CORPORATION**         **NO. 07-173-C-M2**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 2, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**SANDRA SINGH**                                                         **CIVIL ACTION**

**VERSUS**

**WACKENHUT CORPORATION**                       **NO. 07-173-C-M2**

**MAGISTRATE JUDGE'S REPORT**

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 68) filed by defendant, The Wackenhut Corporation ("Wackenhut"). Plaintiff, Sandra Singh ("Singh"), has filed an opposition (R. Doc. 77) to this motion.

**FACTS & PROCEDURAL BACKGROUND**

On March 12, 2007, Singh filed her original complaint in this matter, alleging that her employer, Wackenhut, discriminated against her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended. On December 5, 2007, she filed an amended complaint, asserting a claim of equal pay discrimination under the Equal Pay Act of 1963, 29 U.S.C. §206(d)(1), and/or Title VII of the Civil Rights Act of 1964. Her claims stem from her employment with Wackenhut as a security officer/sergeant assigned to work at Woman's Hospital of Baton Rouge.[1] According to the Affidavit of Wackenhut's General Manager, Ken Kennedy, Wackenhut provides physical security to business, government, and professional clients. *See*, Affidavit of Ken Kennedy, Exhibit 1 to Wackenhut's motion. It has a multi-tiered security service program, whereby it offers different levels of security services from entry-level security officers to elite security officers called Custom Protection Officers or "CPOs." *Id.* The CPO

---

[1] Singh has been employed with Wackenhut as a security officer/sergeant since December 17, 2002, and she currently serves as an assistant supervisor.

1

division of Wackenhut was established in 1989 to provide a higher level of security personnel, who are experienced in working under stressful conditions and in communicating with the public and authorities under such conditions and who are trained in the "use of force" principles and in firearms use and safety.  *Id.*  According to the evidence presented by Wackenhut, to be a CPO candidate, an individual is required to possess one or more of the following qualifications: (1) Military/Combat Arms MOS; (2) Elite/Special Unit Soldier; (3) Graduate of a Law Enforcement Academy; (4) Retired Military; (5) Former Military/Civilian Law Enforcement; (6) Former Fire Fighter; (7) Criminal Justice/Political Science Degree; (8) Former Corrections Officer; or (9) Former Federal Agency Officer.  *See*, Exhibit 1, referring to the CPO requirements issued by Wackenhut, which are attached to Kennedy's affidavit as Exhibit 1-A.

Woman's Hospital ("Woman's") informed Wackenhut that it was interested in phasing in CPOs to work at specific posts and stations beginning on or about December 2002.  *Id*.  Such phasing-in of CPOs occurred at specific hospital posts over a period of time due to fiscal limitations on the hospital's part.  *Id.*  Woman's chose what positions and/or stations at the hospital would be staffed with CPOs.  *Id*.  One of the hospital posts/stations for which Woman's requested an upgrade to a CPO was Singh's station, Station 4.  *Id*.  Station 4 was identified by Woman's as an "area of concern" because personnel at that station, who had worked for a prior security company, had lost the master keys to the exterior hospital doors.  *Id.*[2]

---

[2] Currently, there are fifteen (15) security posts/stations at Woman's, and Stations 3, 4, 7, 8, 10, 11, and 14 are all CPO-manned posts.  *Id.*  There are presently twenty-three (23) CPOs working at Woman's, with eight (8) of those officers being African-American males; eleven (11) being African-American females; three (3) being

On June 21, 2005, Singh sent a letter to Major Jeff Dunlap ("Dunlap"), the Wackenhut Operations Manager at Woman's, advising that it had come to her attention that Wackenhut may decide to replace all Station 4 officers with CPOs and that, if that was indeed the intent of the company, she requested that she be cross-trained as a CPO. *See*, Exhibit 3 to Wackenhut's motion. According to Singh's deposition testimony in this matter, she was told by Dunlap that she was not qualified for the position of CPO, and in order to become qualified, she would need to obtain a degree in criminal justice. *See*, Singh deposition, Exhibit 2 to Wackenhut's motion, pp. 70-71. Singh, however, admitted during her deposition that she never actually applied for the CPO position; that she was not and is not qualified for such position; and that she has not done anything to try and meet the requirements to become a CPO. *Id.*, pp. 244-45; 248-49.

In her present suit, Singh contends that she was subjected to racial and gender discrimination because, in June 2006, she was denied training as a CPO and that such training was instead provided to a white male by the name of Mark Deer. She also asserts that she was illegally removed from her position at Station 4 since that station did not require staffing by CPOs. She seeks lost wages; damages for past and present pain and suffering; damages for mental anguish, humiliation, and inconvenience; and any other pecuniary damages that she may demonstrate. She filed an EEOC complaint related to her claims herein, and the EEOC determined that no Title VII violation had occurred.

Wackenhut previously filed a Motion for Partial Summary Judgment on May 22, 2008, seeking dismissal of Singh's claims under Title VII for alleged discrimination based

---

Caucasian males; and one (1) being a Caucasian female. *Id.*

upon race and/or gender, her claims for physical pain and suffering, and her claims for mental anguish. The Court granted that motion and dismissed those claims on September 10, 2008. Wackenhut has now filed the present motion, seeking dismissal of Singh's remaining claims for unequal pay/wage discrimination and wage loss.

## LAW & ANALYSIS

I.   **Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[3] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[4]

---

[3] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[4] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

**II.     Should Singh's claims for unequal pay/wage discrimination be dismissed?**

Although Singh did not allege any specific facts in her amended complaint supporting her claims for unequal pay/wage discrimination, she alleged two (2) instances of such discrimination during her deposition. Specifically, her first claim of unequal pay/wage discrimination arises from an allegation that two Wackenhut employees, Ferdinand Passatino (a white male) and Yvette Michels (a white female), were paid more than her when she was first hired by Wackenhut on December 17, 2002 for the same work that she was performing. *See*, Singh's deposition, Exhibit 3 to Wackenhut's motion, p. 94-96. Her second claim of unequal pay/wage discrimination concerns several CPOs who allegedly were paid more than her, Nikki Spillman (a white female), James Coan (a white male), and Shawn Latimer (a white male whom, according to Wackenhut's records, has never been an employee of Wackenhut).[5] *Id.*, p. 98-99.

**(A)     Her Title VII unequal pay/wage discrimination claim:**

As an initial matter, the Court finds that Singh's Title VII unequal pay/wage discrimination claim as it relates to the amount she was paid when she was first hired in December 2002, as compared to Passatino and Michels, should be dismissed with prejudice as untimely. Singh did not file an EEOC complaint until August 17, 2006, and in such complaint, she did not allege unequal pay/wage discrimination. Furthermore, even if she had asserted such an allegation relative to when she was first hired, such claim would have been untimely as she was required to file that claim within one hundred eighty (180) days of the alleged discriminatory act under Title VII.

---

[5] *See*, Kennedy affidavit, Exhibit 1 to Wackenhut's motion.

Additionally, even assuming Singh's unequal pay/wage discrimination claim relating to when she was first hired is timely, it should nevertheless be dismissed because she cannot establish a *prima facie* case of unequal pay discrimination under Title VII relative to that claim. To establish a *prima facie* case of discriminatory compensation, Singh must demonstrate: (1) that she is a member of a protected class; and (2) that she was paid less than a non-member of that class for work requiring substantially the same responsibility. *Tillman v. Southern Wood Preserving of Hattiesburg, Inc.*, 2007 WL 2974056 (5th Cir. 2007), quoting *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984); *Myers v. Crestone Intern., LLC*, 2005 WL 83871 (5th Cir. 2005). She must also prove the employer's intent to discriminate. *Earle v. Aramark Corp.*, 2007 WL 2683821 (5th Cir. 2007)(In a case involving disparate treatment based upon unequal pay, the plaintiff bears the burden of proving the employer's intent to discriminate). Although Singh is a member of protected classes in that she is African American and female, she has not presented any competent evidence demonstrating that she was paid less than a non-member of those classes for work requiring substantially the same responsibility.[6] Furthermore, even assuming she demonstrated that her co-workers, Passatino and Michels, were paid more

---

[6] The only indication that Passatino and Michels were paid more than Singh when she was first hired in 2002 is Singh's own self-serving deposition testimony, which does not serve as competent summary judgment evidence. *See, Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139-140 (5th Cir. 1996)(Self-serving and unsubstantiated statements by a plaintiff do not serve as competent summary judgment evidence); *Nilsson v. City of Mesa*, 2007 WL 2669788 (9th Cir. 2007)(A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact, as required to avoid summary judgment); *BMG Music v. Martinez*, 74 F.3d87, 91 (5th Cir. 1996); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005), citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

than her for substantially the same work, she has not demonstrated any discriminatory intent on the part of Wackenhut in paying those employees more than her.  Singh conceded, during her deposition, that both Passatino and Michels had more seniority than her and had been working as security officers at the Woman's Hospital site for a longer period of time than her.  *See*, Singh's deposition, Exhibit 3, p. 95-96, 98.[7]  Prior experience has been recognized as an acceptable factor upon which to base a pay differential if it is not used as a pretext for differentiation because of race or gender.  *Irby v. Bittick*, 44 F.3d 949 (11th Cir. 1995), citing *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir.), *cert. denied*, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988).  Since Singh has not presented any competent evidence demonstrating that Passatino's and Michels' prior experience as security officers is simply a pretext for awarding them a higher salary for performing the same work she performed and that Wackenhut's true basis for such action is discrimination on the basis of Singh's race and/or gender, her Title VII discriminatory pay claim relating to when she was initially hired in December 2002 should be dismissed.

Additionally, Singh's Title VII claim of unequal pay relating to several CPOs who were allegedly paid more than her should also be dismissed because Singh cannot demonstrate that she was paid less than those individuals for work requiring substantially the same responsibility.  As mentioned above, the skill, experience/qualifications, and responsibility required for the CPO position is different from that required of a standard

---

[7] The Kennedy affidavit submitted with Wackenhut's motion also indicates that, under Wackenhut's initial contract with Woman's Hospital, experience and length of service at the hospital site of employees who had worked for the prior security provider were considered in setting the hourly wage of Wackenhut employees, and those factors were taken into account when the wages of Passatino and Michels were initially set. *See*, Exhibit 1 to Wackenhut's motion.

security officer, such as Singh. Moreover, Singh has not established any discriminatory intent on the part of Wackenhut in paying its CPOs (who have more experience and training in the "use of force" principles and in firearms use and safety and who have different responsibilities those of standard security officers)[8] more than its standard security officers.[9] Accordingly, Singh's Title VII discriminatory pay claim should be dismissed.

**(B)     Her claim under the Equal Pay Act:**

To establish a *prima facie* case of disparate pay under the Equal Pay Act, Singh must show that: (1) Wackenhut is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (2) she was paid less than an employee of the opposite sex providing the basis for the comparison. *Wiley v. American Elec. Power Service*, 2008 WL 2787441 (5th Cir. 2008), citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). The Court agrees with Wackenhut that Singh cannot use Michels or Spillman as bases for comparison under the Equal Pay Act because both of those individuals are female. The Court also finds that Singh's claim under the Equal Pay Act relating to when she was first hired in December 2002 and which compares her to Passatino should be dismissed because, under the Equal Pay Act, a plaintiff must file a claim within two (2) years of the alleged equal pay violation pursuant to

---

[8] *See*, Kennedy affidavit, Exhibit 1 to Wackenhut's motion, which explains the fact that the skill and responsibility required for the CPO position is not equal to that of a security officer.

[9] Although Singh has filed an opposition to Wackenhut's motion, she only submitted one attachment to her opposition, which appears to be a list of duties for Station 4 vehicle patrol supervisors. That document is unauthenticated and therefore does not serve as competent summary judgment evidence. Furthermore, such evidence in no way demonstrates that she was paid less than other Wackenhut employees who performed work involving substantially the same responsibility.

29 U.S.C. §255(a).  Since Wackenhut did not file her equal pay claim until December 5, 2007 when she filed her amended complaint herein, her claim relating to unequal pay when she was first hired is untimely.

Finally, Singh's equal pay claim relating to Coan, the white male CPO, also fails because she has not demonstrated that the experience, training, and higher level of responsibility of a CPO is "substantially equal" to that required of standard security officers such as herself.  29 U.S.C. §206(d)(1)(Under the Equal Pay Act, an employer is prohibited from sex-based discrimination where the jobs performed require equal skill, effort, and responsibility and are performed under similar conditions); *Reznick v. Associated Orthopedics*, 2004 WL 1559571 (5th Cir. 2004)(Female employee failed to prove that she held a "substantially equal" position to a male co-worker, as required to make a *prima facie* case under the Equal Pay Act).  Singh has also failed to demonstrate, through any competent summary judgment evidence, that CPOs are paid more than standard security officers.  During her deposition, she admitted that she was unaware of the salary for the CPO position in 2006-07.  *See*, Singh's deposition, Exhibit 3 to Wackenhut's motion, p. 248.  Further, even assuming CPOs were paid more than Singh during that time period, the Equal Pay Act is not violated if a disparity in wages is based upon an employee's experience, training or ability.  *Irby v. Bittick*, 44 F.3d 949 (11th Cir. 1995), citing *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir.), *cert. denied*, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988).  Since the qualifications for becoming a CPO require more experience, training, and/or ability, paying those employees more than standard security officers would not violate the Equal Pay Act.

**III.    Should Singh's wage loss claim be dismissed?**

Lastly, the Court finds that Singh does not have a viable wage loss claim.  Although a plaintiff who succeeds on a discriminatory pay claim under Title VII or the Equal Pay Act may recover back wages equal to the difference between the pay paid to the plaintiff and the pay employees of the oppositive sex received for performing equal work, since Singh has not established her Title VII and/or Equal Pay Act claims, she is not entitled to back wages.  Accordingly, her wage loss claim should also be dismissed with prejudice.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Summary Judgment (R. Doc. 68) filed by defendant, The Wackenhut Corporation, be **GRANTED** and that the remaining claims of the plaintiff, Sandra Singh, be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, October 2, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**